Good morning, Your Honor. May it please the court and counsel, I must begin by thanking the court and esteemed opposing counsel, my friend, Ms. Allen, for accommodating my scheduling problems and rescheduling this hearing. As the court knows, my name is Stephen Matthews and I represent the appellant, Dennis Murray. There seems to be no dispute that Mr. Murray spoke out about environmental issues, the use of public grant monies in Stevens County, the county where he resides, still resides, and as a result of his speech, he was subjected to a series of sweeping prior restraints. He was first suspended and then later terminated. From his employment with the Department of Ecology, I should note that the court below found that Mr. Murray established a prima facie case. And let me just briefly, for the benefit of my argument today and for my own mindset, I would like to touch on each of the elements Mr. Murray is required to prove in order to establish such a prima facie case. First, he must speak about matters of public concern. I don't think there's any dispute that these matters involving the use of public funds in this grant, which was to be used to clean up the Colville River in Stevens County, was a matter of public concern. And then the environmental issues surrounding a project called the TMDL, which was a project to clean up the Colville River, specifically with regard to the bacterial loads in the river. There are some issues intertwined here in terms of, because obviously he's a public employee, and that you have issues that he's speaking out on, but then the question is he's speaking as a public or a private person, and you have issues which I think of insubordination can be classified that way. And then his being a government employee, we have the, you know, we've got the Pickering test as well, and so, you know, all of those, you know, kind of go together. So I guess that I, as you're approaching this, I would ask you, you know, why doesn't this case boil down to a question of Mr. Murray's insubordination as a result of policy differences he had with his supervisors, supervisors, advisors, whether related to the inclusion of the conservation district in the TMDL implementation plan or the management of the Colville grant, and why isn't it reasonable for a government agency acting as an employer to take progressive disciplinary action to halt this insubordination and efficiently carry on its mission? So you've got all of that going on at one time, so. Thank you, Your Honor. Let me speak exactly to that issue. The concern with the whole insubordination argument here is that it's bootstrapping. In other words, if we analyze what it is that Mr. Murray essentially did that was insubordinate was he spoke out on these issues. In other words, in contravention of the prior restraints. Well, some of the things he did that, but there are other things like, for example, that report that he just sends out with changes. They told him not to. At a point he's put on, you know, they tell him don't send emails out when you're speaking in a government capacity without having review. And it seems to me that some of those things, you know, they have to, you know, employers have to be able to say something on that. And that's precisely why we are not seeking summary judgment, nor did we raise the issues associated with those issues. In other words, if you analyze the chronology of the events, those events did occur. Mr. Murray had this dispute regarding the TMDL report and the draft and these things. But those things occurred in conjunction with a reprimand that he received. And that reprimand did not lead either to his termination or his suspension. So if we're looking at the substantial factor test and we think about that in the context, those acts, be they right or wrong, did not lead to the discipline that Mr. Murray is seeking a remedy for here. And none of the discipline, if we analyze the letters that led to his suspension and later to his discharge, really tied in tightly to any insubordination over and above his alleged disregard of these prior restraints which were imposed on him. It's part of his job was liaison to the people in the district, I gather. And he gets in a policy argument, he thinks the policy ought to be one thing, and his superiors say no, it's going to be a little different from that. And then he spends the rest of his time lobbying people to undercut that decision, it seems to me. Your Honor, I don't think that he was attempting to undercut it, and there's evidence in the record that he wasn't. From his replacement's own mouth, she said, I don't think Mr. Murray was trying to stir up controversy or create difficulty. He was trying to actually help the process and contribute to the process. Well, in his view, but wasn't he working his policy, he had a policy dispute with his superiors. I'm not talking about what he said. I'm talking about what a representative of the Department of Ecology said, Karen Baldwin, his replacement in her deposition, which is in the record. And the other point that I want to make is that to the extent that Mr. Murray disagreed, the disagreements that are before this Court and that are an issue in this Court occurred after he was reassigned to other duties. In other words, he was no longer the liaison to the community for the TMDL project. He was no longer involved with the grant when he was expressing his concerns regarding these things. And one thing that I want to emphasize to the Court is that Mr. Murray's alleged misconduct, call it what you will, cannot be just, it's not right to reach in and say, well, this alone would have led to his discharge. The Department of Ecology, the defendant, Ms. Zam, testified that she looked at his behavior as a whole, not just to a particular singular acts. And we don't have evidence that says, listen, if Mr. Murray had done any one of these things, we would have fired him. We don't have that evidence. Well, let's say if we just, I want to ask you this question because we have limited time. Given the peculiarity of the factual situation here relative to the Pickering balancing inquiry, what authority would preclude the panel from deciding this case on the clearly established prong of the qualified immunity inquiry? Qualified immunity prong is... Well, now we know we can just jump to the second one if it's not clearly established since Harrison v. Callahan. It would appear from the development of the case law that a couple of things prevent that. First, the use and enforcement of sweeping prior restraints that had no basis. The one prior restraint that I think is clear and that would entitle Mr. Murray, in fact, to a statement, you can never attend a Stevens County Conservation District meeting. And the alleged justification for that was that the Conservation District didn't want him to. In truth, the Conservation District then, it's represented, testified, we never requested that. So there's one thing, and the history with prior restraints is well-established and well-known case law. Second, over and above that, it was the Department of Ecology itself that told Ms. Zim to find out if Mr. Murray was speaking as a private citizen or in the capacity of representing the Department of Ecology. The point being that this was, and she didn't ask that question, she didn't inquire, but we have a unique set of facts here where we can actually prove that the Department and Ms. Zim understood and knew that this was well-established law and that they're not entitled to qualified immunity on these facts, especially where they did not act based on some of the advice that they were given to inquire about Mr. Murray's, the nature of Mr. Murray's speech. Do you want to save any time for rebuttal? I'd like to save a minute. Okay. Thank you. Thank you. Good morning. Good morning. May it please the Court, my name is Danette Allen. I'm an Assistant Attorney General representing the Department of Ecology. I think we factually understand what's going on here, but I wanted to ask you about Posey and subsequent decisions have held that the question of whether a public employee spoke as a private citizen or pursuant to official duties is a mixed question of law and fact. So what's your best argument that we can decide this issue in a palliative's favor at summary judgment? Thank you. Posey did in fact hold that whether or not the employee is speaking as part of their job duties is a mixed question or law and fact. However, the Court said just because you have a question of fact, as to that matter, does not preclude summary judgment. What you need to do is determine, first of all But it can sometimes. So what's your best argument that it wouldn't preclude it here? In this instance, summary judgment should not or should be granted here because the Pickering balancing test does establish that the Court or the ecology had adequate justification to dismiss Mr. Murray. They had adequate Excuse me. To get to that point, then you're saying that we would assume he was speaking on a matter of public concern as a private citizen, and even if you assume both of those, that simply gets you to the Pickering test? Is that what you're saying? What I'm saying is that the question of whether or not he spoke on a matter of public concern is a question of law in this instance, which Judge Murray Why are you talking about the Pickering test? Would that end the case in your favor at that point? The Pickering balancing test, no speech is protected unless it passes the Pickering balancing test. In this instance, Mr. Murray's speech cannot pass the Pickering balancing test. Ecology's interest I think we're thinking the same thing. Ecology's interest clearly outweighs Mr. Murray's interest here in disrupting the plan that he was hired to perform. Well, he does talk out on certain things that they're misusing, that the financial misusing the grant, and there's a letter that goes to a commissioner as far as that goes. So maybe for purposes of the Pickering balancing test, if you could briefly summarize that Mr. Murray's arguments regarding potential disruption, actual disruption, resulting from what you would term as his insubordination. Thank you. In fact, Mr. Murray did engage in actual disruption. The first disruption being that, of course, he delayed the plans being completed in a year from the time of the report was supposed to be completed in July of 04, wasn't completed until July of 05, which of course necessarily delayed actually working on cleaning up the fecal matter in the Colville River. He also disrupted the plan by making disparaging, actual disruption, disparaging comments about his supervisors and his colleagues. The new TMD lead, Karen Baldwin, he made misrepresented facts in his statements to the advisory group in the conservation district's letter that they sent to EPA. Mr. Murray then did interlineations throughout. So it's your position that it was actual disruption? Actual as well as potential disruption. But it's our submission, Your Honor, that it was actual disruption. He actually Well, wouldn't you have to show if, for purposes of qualified immunity, and if you assume a constitutional violation, say why, that there is a clearly established that a government employer cannot retaliate against an employee for exposing mismanagement or misappropriation. He does complain about things, those things. So if you assume an actual constitutional violation, do you have to show actual disruption to overcome that? Do not have to show actual disruption. Potential disruption is sufficient. However, in this instance What about, does the Kaiser case, doesn't that say you have to have actual disruption? The Kaiser case talks about actual disruption. The closer you are to actually having a grave public concern, for instance, when you are reporting actual Well, he does report mismanagement of funds on the grant, and so wouldn't that be something of public concern and pretty serious? Yes, if in fact it were true. In this instance, as the court correctly was asking Mr. Matthews, we have matters of public, this is a matter of policy that Mr. Murray is disputing. He doesn't like that the cleanup plan is not being done the way he wanted it to be. Waters v. U.S. does say that we need only have potential disruption. If we define it that way, but it is summary judgment. It's not a trial. So he's entitled to all favorable inferences, and if you, maybe isn't one of the favorable inferences that he's reporting mismanagement, and that would be a constitutional violation? Correct. The employer, though, need not wait until, and that's the whole purpose of the Pickering balancing test when the government interest comes out, that they need not wait until the employee actually disrupts or impedes and totally sets, impedes the project for which they were hired to perform. If we were to put such a rule into effect, it would make no sense. Government could not work and could not continue to work if the employee were allowed to go forward so insubordinately as someone as Mr. Murray did, and disrupt and shut down the very project for which he was hired to perform. Thus, the employer is correct in being able to look at what was being done. In this case, it's clearly insubordinate conduct. Mr. Murray was directed repeatedly to continue to copy his supervisors in his emails and in his communications, and he continued to disregard that. That's why he was hired. Does it make any difference who he is speaking to? In this instance, the case law says no. It doesn't, just that you're speaking to a select group does not necessarily mean that your speech would not be protected. However, this instance is one of the factors that really tips the balancing test in favor of ecology because the group that he is speaking to is the very group that he was the face of ecology to. It is the very group for which he put together to write the water cleanup plan. The group that he worked to collaborate and be a part of, and instead of being neutral with that group, he now has taken a position that is absolutely in opposite of what ecology wanted to perform, which was the water cleanup plan. I'm a little confused by your brief because it appears to argue that Murray spoke only on private matters, but only pursuant to his official department duties. Can you tell me what is it here? What Mr. Murray was doing as the TMDL lead and as the ecology employee, he never took off his ecology hat in the emails and the communications for which he was disciplined. What he was doing was speaking about his private concerns and his private grudges, which were that the cleanup plan was not being done his way. His supervisors overrode his decision to exclude the conservation district, and his supervisors didn't agree with his assessment of the grant that the conservation district had misused the grant. At one point, apparently his supervisor did agree with him and then went back on that. Isn't that a tribal issue there? As to the question of whether it was a matter of public concern, I believe that that is an issue of law for the court to determine, and the court properly did determine that Mr. Murray's interests were more towards putting forward his own personal grudges and his own personal dispute with his supervisor. That's one of the things he was mad about that comes through. His supervisor agreed with him until they had the March 11th meeting with the conservation district, and at that point his supervisor said, okay, I understand the conservation district's position, and so now I don't agree with you, Mr. Murray, and that fueled his changing the reports, writing the conservation district out. And so it is not a question of fact, it's a question of law for the court reading the face of all of the documents and all of the communications submitted by Mr. Murray. In this instance, Your Honor, we would respectfully request that the court affirm the district court order because ecology's interest here clearly outweighed Mr. Murray's. If we were to allow employees to conduct themselves in such an insubordinate manner, and Mr. Murray's was grossly insubordinate, then the work of the government agencies would be shut down. Thank you. All right. Thank you for your argument. There are a couple of things that I would like to cover quickly. First of all, there's no evidence in the record that Mr. Murray's activities in any way delayed this. That's just pure argument of counsel. And likewise, the notion that he made disparaging remarks about his coworkers is of limited truth, but let me say this, every whistleblower is saying negative things about coworkers or supervisors. And to simply characterize this as a policy dispute is also always present in a whistleblowing situation. In other words, the employer says one thing. Well, that's not true. That's not always. I mean, it could be you could be reporting that someone's stealing money, and that has nothing to do. I mean, here, obviously, at the heart of this, I think, given all inferences, I mean, these people do not agree on how to Well, well, let me say this. There was some legitimate The water is for fighting type thing. Yeah, out of Apley's brief, that it is true that there was a disagreement, but it was a disagreement. And Mr. Murray was reassigned because he disagreed. And we aren't here to say that that was inappropriate. What we are here to say is that to try to squelch him from that point forward was inappropriate. It denied the public the access to somebody who has some If he was writing letters to the editor or something like that, it might be one thing. But what he's doing is communicating directly to the people that he at least at one time was in charge of conveying the position of the Ecology Department to. And he's still going after them. He's still trying, it seems to me, to frustrate the policy that he disagreed with. He's not he's not trying to, you know, talk to the public. He's trying to talk to the people who are involved in this program. If I may just quickly respond. He is speaking to his elected officials who happen to also be part of that group. And he's speaking to the people who were actually involved in the very project that's at issue, the TMDL. So he is reaching out to those. He's not just speaking to the public at large. He's speaking to the relevant people, including his own elected officials, would be subject to the policy with which he disagrees. Well, we're helping to formulate the policy to which he disagrees. And in other words, they're helping to formulate the very policy. If he as a citizen now is to have some input into the process, where is he to turn if not to the very people who were involved in the process making the policy, including his own elected officials? Freetag seems to hold that such communications to elected officials and government officials, which are a big portion of the people he's speaking to, those communications are always protected. And so for that reason, we get past the whole notion of qualified immunity and all these other things, because his speech really does go to the core of what matters in a free speech case, which is that he's talking to the relevant people about matters of public concern. That's the essence of Mr. Murray's case. And on the other hand, you have his employer, who's now reassigned him away from these duties, there's no dispute about that, and actually taking him out of the watershed. And they've testified his duties don't, you know, one of the reasons he's disciplined is not because he's doing his duty when he And so he is speaking as a private citizen, he has unique qualifications, and he's speaking to the right people, the people who were involved in the process of cleaning up this river. If he can't speak to those people, then he can't be effective in his communication. All right, you're past your time, and thank you both for your argument. Well argued. This case will stand submitted.
judges: Canby, Thompson, Callahan